Filed 10/1/24  P. v. Brown CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. CHARLES BROWN, Defendant and Appellant. | B325282 (Los Angeles County Super. Ct. No. BA146986) |

APPEAL from an order of the Superior Court of Los Angeles County, Craig J. Mitchell, Judge.  Reversed and remanded with directions.

Joanna Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Ryan M. Smith, Deputy Attorney General, for Plaintiff and Respondent.

In 2008 a jury convicted Charles Brown of second degree murder. In 2019 Brown petitioned for resentencing under Penal Code former section 1170.95 (now section 1172.6).[1] Following briefing and an evidentiary hearing, at which Brown testified, the superior court denied the petition, finding the People proved beyond a reasonable doubt that Brown was guilty of second degree murder under an implied malice theory because he was a major participant in the underlying felony (a robbery) and acted with reckless indifference to human life.

On appeal, Brown contends the superior court applied an incorrect standard to the question whether Brown was guilty of second degree murder. We agree and reverse. We remand for the court to reconsider the petition applying the correct legal standards under current law.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *The Evidence at Trial*

In March 1997 Bobby Cisneros was a cocaine dealer in Los Angeles, from whom Brown had been purchasing cocaine for approximately two years. On the morning of March 4, 1997 Brown told Cisneros's partner, Eduardo Quiroz, that he wanted to purchase a half-kilogram of cocaine, which Quiroz said would cost at least $7,500. Brown returned a short time later and told Quiroz he had the money, and Quiroz left to tell Cisneros about the deal. (*People v. Brown* (Jan. 19, 2010, B212584) [nonpub. opn.] (*Brown I*).)

---

[1]    Further statutory references are to the Penal Code.

2

About an hour before the shooting, Brown and Cisneros were seen together near Brown's residence. (*Brown I, supra*, B212584.) Shortly before the shooting, Brown's friend Jamal Webster told another friend (Tabatha Pritchett) that Webster and Brown were planning to rob "some Mexicans."[2] Webster showed Pritchett a shotgun that was 12 to 18 inches long and said that after the robbery he would not be around for a long time.

Around 3:00 p.m. that afternoon, two children who lived near Brown saw Brown at his residence. One child recalled seeing Brown enter his residence and then hearing two gunshots. He saw two black men run out of the house, one of whom had a revolver. The men got into a truck and drove away. The second child said he heard the gunshots and then saw Brown and another person running out of the house. Brown was carrying a gun. (*Brown I, supra*, B212584.)

When police arrived at Brown's residence after the shooting, they found Cisneros's body on the floor in the doorway to Brown's bedroom. Cisneros had died of a shotgun wound to the back of the head. He had no defensive wounds, and no weapons were found nearby. (*Brown I, supra*, B212584.)

B.    *The Jury Verdict and the First Appeal*

Brown was arrested in Arkansas in 2007. He was charged with Cisneros's murder with special allegations he personally used a firearm within the meaning of section 12022.5, subdivision (a), and a principal in the offense was armed with a firearm within the meaning of section 12022, subdivision (a)(1).

---

[2]    Pritchett testified that Webster was Brown's nephew, but Brown testified at the evidentiary hearing that Webster was his friend. This discrepancy does not affect our opinion.

The jury was instructed on first degree willful, deliberate, and premeditated murder and first degree felony murder. The court did not instruct on second degree murder other than saying "all other murders are of the second degree." The jury returned a guilty verdict on second degree murder (without specifying the theory) and found not true the allegation that Brown personally used a firearm. The trial court[3] sentenced Brown to 16 years to life in state prison. We affirmed the conviction on appeal. (*Brown I, supra*, B212584.)

C.  *The Petition for Resentencing*

On January 9, 2019 Brown filed a form petition for resentencing seeking to vacate his murder conviction and be resentenced in accordance with recent statutory changes relating to felony murder and the natural and probable consequences doctrine. In his petition, Brown declared he was "convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine" and he "could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019." He also checked the boxes on the form stating he was not the actual killer and did not act with the intent to kill. Further, he asserted he was not a major participant in the felony or did not act with reckless indifference to human life. Brown requested appointment of counsel. After appointing counsel and receiving memoranda from the parties, the superior court[4] denied the petition, finding Brown failed to make a prima facie showing of

---

[3]  Judge William N. Sterling.

[4]  Judge Sterling.

4

eligibility for relief because he could not have been convicted of second degree felony murder based on a robbery and the jurors were not instructed on the natural and probable consequences doctrine. Therefore, "the conviction was neither for felony murder nor on the theory of natural and probable consequences." (*People v. Brown* (Mar. 9, 2021, B303601) [nonpub. opn.] (*Brown II*).)

We reversed the order denying Brown's petition, explaining the judge's response in the affirmative to the jury's question whether Brown could be convicted of second degree murder even if he was not the actual killer created some ambiguity as to whether Brown was convicted of second degree felony murder. Thus, we concluded, "The record of conviction does not conclusively show the jurors did not convict Brown of second degree murder based on a felony murder theory." We remanded the matter with directions to the superior court to issue an order to show cause and to conduct further proceedings in accordance with former section 1170.95, subdivision (d). (*Brown II, supra,* B303601.)

D.    *The Evidentiary Hearing*

The superior court on remand[5] held an evidentiary hearing on June 22, 2022. The prosecutor introduced the transcript from Brown's 2008 trial and argued Brown was ineligible for resentencing because section 1170.95 applied only to convictions for felony murder and not to convictions for second degree murder. The prosecutor also argued that Brown could be convicted of felony murder under current law because Brown was

---

[5]    Judge Craig J. Mitchell.

5

a major participant in the underlying felony and acted with reckless indifference to human life.

Brown testified at the hearing. He explained that prior to the shooting he had purchased cocaine from Cisneros approximately 20 to 30 times—roughly every two or three months. Brown typically bought $9,000 worth of cocaine, sold some of it, and used some of it himself. It was normal for Cisneros to come to Brown's residence to make the sale. On the day of the shooting Brown told Webster that he intended to rob Cisneros. Webster "said he wanted to be in it so he could get a couple of ounces." Brown planned to move to Arkansas after the robbery to take care of his sick mother.

Brown testified that when Cisneros arrived at the apartment, "I got the dope and the money, robbed him, I went out the room, and I don't know what Jamal—he was in there, and he hit him with the gun and shot him." Brown continued, "I was going out the room. I got the money and drugs. I was leaving." After he heard the gunshot, Brown said to Webster, "'Why did you do that?' I told him, because it was just a simple robbery. There wasn't no need to kill him." Brown admitted he had been armed with a pistol, but claimed he did not know Webster had a shotgun with him until after the shooting. Brown acknowledged he "sometimes" had seen Cisneros with a gun.

After taking the matter under submission, the superior court denied Brown's petition for resentencing, finding "by proof beyond a reasonable doubt that the petitioner is guilty of second degree murder under an implied malice theory, specifically, that he was a major participant in the underlying felony and acted with reckless indifference to human life." The court found Brown's "account of what transpired was far from credible." For

6

example, the court did not believe Brown's testimony that he did not know Webster was armed, stating, "It is not reasonable that such a large weapon [as a shotgun] would be concealed, brought to a location, and that Mr. Brown would be unawares."

In finding Brown was a "major participant" in the robbery, the superior court considered the factors outlined in *People v. Banks* (2015) 61 Cal.4th 788 and found Brown was an active participant because he played a "major role" in planning the robbery and Brown should have known the danger of violence was "significant" given the large amount of drugs involved and that "everybody is armed." The court also considered the factors outlined in *People v. Clark* (2016) 63 Cal.4th 522 regarding whether Brown acted with reckless disregard for human life. The court found Brown made no effort to minimize the risk of violence during the robbery, stating "one does not come armed and have a companion armed if the eventuality of violence was not contemplated."

Brown timely appealed.

## DISCUSSION

A.      *Senate Bill No. 1437 and Section 1172.6*

Senate Bill No. 1437 (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule. (*People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843, 847-848; see *People v. Reyes* (2023) 14 Cal.5th 981, 984 (*Reyes*).) Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of

7

malice to convict a principal of murder, except under the revised felony-murder rule as set forth in section 189, subdivision (e). (*Reyes*, at p. 986; *Gentile*, at pp. 842-843.) Section 189, subdivision (e), now requires the People to prove specific facts relating to the defendant's individual culpability: The defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, assisted in the commission of murder in the first degree (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life as described in section 190.2, subdivision (d) (the felony-murder special-circumstance provision) (§ 189, subd. (e)(3)). (See *Strong*, at p. 708.) Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2), effective January 1, 2022, expanded the scope of potential relief to apply Senate Bill 1437's ameliorative changes to individuals convicted of attempted murder and voluntary manslaughter. (See § 1172.6, subd. (a).)

Senate Bill 1437 also provided a procedure (now codified in section 1172.6) for an individual convicted of felony murder or murder under the natural and probable consequences theory or other theory under which malice is imputed to a person based solely on that person's participation in a crime to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if the individual could not have been convicted of murder under Senate Bill 1437's changes to sections 188 and 189. (*People v. Lewis, supra*, 11 Cal.5th at p. 959; *People v. Gentile, supra*, 10 Cal.5th at p. 847.)

If the section 1172.6 petition contains all the required information, including a declaration by the petitioner that he or

8

she is eligible for relief based on the requirements of subdivision (a), the sentencing court must appoint counsel to represent the petitioner upon his or her request pursuant to section 1172.6, subdivision (b)(3). Where a petitioner makes the requisite prima facie showing the petitioner falls within the provisions of section 1172.6 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c) & (d)(1).)

Section 1172.6, subdivision (d)(3), provides that at the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." Further, "[t]he prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1172.6, subd. (d)(3).)

We review the superior court's decision to deny the petition after an evidentiary hearing for substantial evidence, provided the court understood the elements of the offense and applied the proper standard and burden of proof. (*Reyes, supra*, 14 Cal.5th at p. 988; *People v. Vargas* (2022) 84 Cal.App.5th 943, 951.) "[W]here there is an issue as to whether the trial court

9

misunderstood the elements of the applicable offense, the case presents a question of law which we review independently." (*Reyes*, at p. 988.)

B.   *The Superior Court Applied an Incorrect Legal Standard in Finding Brown Could Be Convicted of Second Degree Murder*

As discussed, the superior court found Brown guilty of second degree implied malice murder, which, as Brown acknowledges, remains a valid theory under current law. (See *People v. Rivera* (2021) 62 Cal.App.5th 217, 232 [after Senate Bill 1437 "a person may still be convicted of second degree murder, either as a principal or an aider and abettor"]; see also *Reyes, supra,* 14 Cal.5th at p. 987.) The court's finding was based on its determination Brown was a major participant in the underlying felony who acted with reckless indifference to human life. (§ 189, subd. (e)(3).) However, this standard applies only to first degree felony murder, and is not the relevant inquiry for determining guilt for second degree implied malice murder.[6]

---

[6]   The Attorney General does not address Brown's argument that the superior court applied an incorrect legal theory to support second degree implied malice murder, instead arguing there was substantial evidence Brown was a major participant who acted with reckless disregard for human life. To the extent the Attorney General's position is that there was substantial evidence to support first degree felony murder, the Attorney General does not address whether this could be a basis for denial of a resentencing petition where the jury found Brown guilty of second degree murder. (See *People v. Hernandez* (2021) 60 Cal.App.5th 94, 109-111 [neither law of the case doctrine nor double jeopardy prevented the superior court from finding the defendant was ineligible for resentencing based on first degree

A finding of ineligibility based on implied malice murder may be based on a finding a defendant was a direct perpetrator who harbored implied malice or was an aider and abettor to the perpetrator. (See *Reyes, supra,* 14 Cal.5th at p. 987.) With respect to liability as the perpetrator, "[m]urder is committed with implied malice when 'the killing is proximately caused by "'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.'"'" (*Id.* at p. 988; accord, *People v. Elmore* (2014) 59 Cal.4th 121, 133.) "'To be considered the proximate cause of the victim's death, the defendant's act must have been a substantial factor contributing to the result, rather than insignificant or merely theoretical.'" (*People v. Jennings* (2010) 50 Cal.4th 616, 643.) "[A]cts that merely create a dangerous situation in which death is possible depending on how circumstances unfold do not, without more, satisfy this causation requirement." (*Reyes*, at p. 989.) Further, "[t]o suffice for implied malice murder, the defendant's act must not merely be dangerous to life in some vague or speculative sense; it must "'involve[] a high degree of probability that it will result in death.'"'" (*Ibid.*)

In this case, the superior court considered that Brown planned the robbery, the success of which relied in part on Brown's relationship with Cisneros; Brown was armed during the robbery; Brown should have known the risk of violence was significant; and Brown took no steps to minimize the risk of violence. While these factors are relevant to determining guilt of

_____

felony murder although the original conviction was for second degree murder].)

11

first degree felony murder (see *People v. Banks*, *supra*, 61 Cal.4th 788 and *People v. Clark*, *supra*, 63 Cal.4th 522), they are insufficient to support a conviction for second degree implied malice murder.  The court failed to consider whether Brown's act (the robbery) was a substantial factor in contributing to the shooting.  Nor did the court consider whether there was a high degree of probability that death would result from the robbery.

Turning to implied malice murder as a direct aider and abettor, the elements are as follows:  "'[D]irect aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea.  [Citation.]  In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act.  For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act.  Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering act, not the result of that act.  The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit the act, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.'" (*Reyes, supra,* 14 Cal.5th at pp. 990-991; accord, *People v. Powell* (2021) 63 Cal.App.5th 689, 712-713.)  Thus, the relevant inquiry here is whether Brown knew Webster intended to commit the act (shooting Cisneros), intended to aid Webster in the shooting, knew the shooting was dangerous to life, and acted in conscious disregard for life. (*Reyes,* at p. 992.)  The superior court here did not engage in these inquiries or make the necessary findings.

12

Because the superior court failed to consider the appropriate elements for second degree implied malice murder under either a direct perpetrator or aiding and abetting theory, its decision was based on an error of law. "[G]iven the nature of this error, it is 'uncertain whether the superior court would have reached the same result using correct legal standards.'" (*Reyes, supra*, 14 Cal.5th at p. 992.) Accordingly, remand is appropriate for the superior court to reconsider the petition applying the correct legal standard.[7]

---

[7] Brown contends we should reverse the superior court's order and direct the court to enter a new order granting the petition because Brown testified he did not intend for Webster to kill Cisneros, and therefore, substantial evidence did not support a guilty finding of second degree implied malice murder based on an aider and abettor theory. And further, Brown's plan to commit robbery (even armed robbery) did not create a high degree of probability Brown's conduct would result in death. However, the superior court found Brown's account of the robbery was not credible. Accordingly, it is uncertain what the superior court would have found if it applied the correct legal standard, and the proper remedy is to remand for further proceedings under that standard. (*Reyes, supra*, 14 Cal.5th at p. 992.)

## DISPOSITION

The order denying Brown's petition for resentencing is reversed, and the matter is remanded for the trial court to reconsider the petition applying the correct legal standards under current law at a new hearing.


FEUER, J.

We concur:


MARTINEZ, P. J.


SEGAL, J.